**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 11, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP1989-CR**

Cir. Ct. No. 2018CF1223

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

OMAR S. CORIA-GRANADOS,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

¶1    FITZPATRICK, P.J.  The State of Wisconsin has charged Omar Coria-Granados, in the Dane County Circuit Court, with an attempt to have sexual

contact with a person under the age of thirteen, E.,[1] contrary to WIS. STAT. §§ 948.02(1)(e) and 939.32 (2015-16). The State has also charged Coria-Granados with sexual contact with M., E.'s sister, without that person's consent, contrary to WIS. STAT. § 940.225(3m) (2015-16).

¶2 Pretrial, the State filed a motion, pursuant to WIS. STAT. § 904.04(2), seeking to introduce at trial evidence of other acts allegedly committed by Coria-Granados against E. and M. Pretrial, the State also filed a separate motion pursuant to WIS. STAT. § 908.08, seeking to introduce at trial an audiovisual recording of a statement made by E. The circuit court denied each of the State's motions, and the State appeals under WIS. STAT. § 974.05(1)(d)2.[2]

¶3 For the following reasons, we reverse the circuit court's ruling regarding admission of the other-acts evidence, affirm the circuit court's ruling that denied admission of the audiovisual recording of E.'s statement, and remand this matter for further proceedings consistent with this opinion.

**BACKGROUND**

¶4 In April 2018, E. and M. met separately with a forensic interviewer and, in audiovisual recorded statements, reported that a long-time adult family friend, Coria-Granados, touched them and performed other acts that made each

---

[1] Pursuant to WIS. STAT. RULE 809.86(4) (2017-18), we use an initial in place of the alleged victims' names.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] WISCONSIN STAT. § 974.05(1)(d)2. allows the State to appeal, prior to trial, from an "[o]rder or judgment the substantive effect of which results in … [s]uppressing evidence."

feel uncomfortable. We next discuss the charges against Coria-Granados that arose from those interviews.

¶5 In one of the incidents described by E., she and Coria-Granados were alone in the living room at Coria-Granados's home while E.'s father was in the bathroom. During that time, according to E., Coria-Granados reached his hands into E.'s shorts in an attempt to touch her vagina. E. stated in the interview that she grabbed Coria-Granados's hand and told him to stop, and this seemed to anger Coria-Granados. As a result of that allegation, Coria-Granados was charged with attempted first-degree child sexual assault which occurred between June 1 and August 31, 2017. E. was either ten or eleven years old on those dates.

¶6 During her forensic interview, M. alleged that Coria-Granados grabbed what M. referred to as her "butt" while she and Coria-Granados were outside his home. As a result of that allegation, Coria-Granados was charged with fourth-degree sexual assault which occurred between June 1 and August 31, 2017. M. was seventeen years old on those dates.

¶7 During the forensic interviews, E. and M. made other allegations about Coria-Granados that were the subject of the other-acts motion brought by the State requesting admission of the acts in evidence at trial. The specifics of the five purported other acts will be discussed shortly. As noted, the State also filed a motion, pursuant to WIS. STAT. § 908.08, seeking to introduce in evidence at trial the recorded audiovisual statement of E.

¶8 The circuit court ruled that the other-acts evidence proffered by the State is not admissible in evidence. Further, the circuit court ruled that, in light of the factors and standards delineated in WIS. STAT. § 908.08(4), it is not in the "interests of justice" to admit E.'s recorded audiovisual statement into evidence.

## DISCUSSION

¶9    The State appeals the circuit court's rulings that the other-acts evidence and the audiovisual recording of E.'s statement are not admissible in evidence at trial.  We discuss each of the circuit court's rulings in turn.

### I.  Admissibility of Other-Acts Evidence.

### A.  Governing Principles.

¶10    We begin with the principles that govern our analysis regarding the other-acts evidence at issue in this appeal.

¶11    "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  WIS. STAT. § 904.04(2)(a).  However, under some circumstances, "evidence of other crimes, wrongs, or acts" is admissible.  To determine whether to admit evidence of other acts, courts engage in the three-step analysis set forth in *State v. Sullivan*, 216 Wis. 2d 768, 771-72, 783, 576 N.W.2d 30 (1998).

¶12    The first step in the *Sullivan* analysis asks whether the party offers the evidence for a permissible purpose under WIS. STAT. § 904.04(2)(a).  *Sullivan*, 216 Wis. 2d at 772.  Permissible purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a).  The second step in the *Sullivan* analysis asks whether the other-acts evidence is relevant.  *Sullivan*, 216 Wis. 2d at 772.  The party seeking the admission of the other-acts evidence (in this case, the State) has the burden to establish the first two steps of this analysis "by a preponderance of the evidence." *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.

¶13   If the first two steps of the ***Sullivan*** analysis are satisfied, the burden then shifts to the opposing party (here, Coria-Granados) in the third step to "show that the probative value of the evidence is substantially outweighed by the risk" of confusion of the issues for the jury or unfair prejudice. ***Id.***, ¶¶19, 41; ***Sullivan***, 216 Wis. 2d at 772-73; *see* WIS. STAT. § 904.03.

¶14   In addition to "this general framework, there also exists in Wisconsin law the longstanding principle that in sexual assault cases, particularly cases that involve sexual assault of a child, courts permit a 'greater latitude of proof as to other like occurrences.'" ***State v. Davidson***, 2000 WI 91, ¶36, 236 Wis. 2d 537, 613 N.W.2d 606 (quoted source omitted). This common law evidentiary rule is now partially codified in WIS. STAT. § 904.04(2)(b)1. *See **State v. Dorsey***, 2018 WI 10, ¶¶31-33, 379 Wis. 2d 386, 906 N.W.2d 158. The greater latitude rule applies to each step of the ***Sullivan*** analysis. ***Marinez***, 331 Wis. 2d 568, ¶20.[3]

## B.  The Five Other Acts.

¶15   The State requested in the circuit court that evidence regarding five other acts be admitted at trial. We now describe details of each purported act. E. and M. stated the following information about each incident to the forensic interviewer as described in the complaint and in the transcript of the hearing regarding admission of this evidence.

---

[3] The State contends, and Coria-Granados does not dispute, that the common law greater latitude evidentiary rule and the codification of the greater latitude rule at WIS. STAT. § 904.04(2)(b)1., are applicable to each step of our analysis in these circumstances. In addition, the State contends, and Coria-Granados does not dispute, that both E. and M. were "children" at the time of the alleged other acts and that E. was a child at the time of the charged act.

### *1. The Milwaukee Incident.[4]*

¶16 In the summer of 2017, Coria-Granados and his wife took E. to Milwaukee, and they stopped in Johnson Creek at the Old Navy store on the way. Coria-Granados and his wife bought two pairs of shorts and two shirts at the store for E., and E. changed into her new clothes before they continued their drive. Once in Milwaukee, Coria-Granados dropped his wife off at a hair salon and then drove E. to a parking spot where they could not be seen by anyone else.

¶17 While parked, Coria-Granados talked to E. and asked her about school. E. told Coria-Granados that she was being bullied at school and she was sad about that. Coria-Granados then suddenly put his hand under her shirt and squeezed E.'s breast. Coria-Granados also pulled his penis out of his pants and insisted that E. look at it. Coria-Granados told E. that if she told her parents or his wife what he had done, he would tell E.'s parents that she used Snapchat,[5] which her parents had forbidden E. to use.

¶18 After those events, E. got some "hot Cheetos" from the El Rey grocery store, and E. remembered that there was a small stand where corn was sold outside the grocery store.

¶19 The circuit court held a hearing on the State's other acts motion at which time the court asked for further details regarding this alleged incident. In response to the circuit court's inquiries, the State explained the following. E. told

---

[4] The parties generally use the same shorthand phrase for each act, and we adopt the same phrases.

[5] "Snapchat is a mobile app and service for sharing photos, videos, and messages with other people." https://techterms.com/definition/snapchat (last visited Feb. 5, 2021).

investigators that, at the time she was alone with Coria-Granados in the car and he grabbed her breast and exposed his penis, she and Coria-Granados were "in a parking lot by an apartment building that was close to the El Rey" grocery store. Also, from photographs, E. was able to identify that the grocery store was on Cesar Chavez Drive. E. also stated to investigators that Coria-Granados had taken his wife to a hair salon with "a very Hispanic name" that day, and the salon is "across the street from a church that had a gold baby Jesus up on the top of it."

### 2. The Soccer Match Incident.

¶20    Coria-Granados and M. were watching a soccer match at an indoor facility when he told M. that "he liked to look at girls' butts." Coria-Granados then "slapped and grabbed [M.'s] butt." Later, Coria-Granados sent a text to M. which stated that M. should not to tell her parents what he had done.

¶21    At the hearing on the State's motion to admit the other-acts evidence, the circuit court asked for further information concerning where this event occurred. The State then identified for the circuit court a specific name and address for the field as is detailed in the complaint.

### 3. The Bra Incident.

¶22    Shortly after M. came home after a surgery, Coria-Granados was at her family's home. Coria-Granados walked into her bedroom and, while they were alone, Coria-Granados picked up and held a bra that M. had left on a piece of furniture.

## *4. The Thigh Incident.*

¶23    When M. was fifteen years old, she was a passenger in Coria-Granados's car while driving to his home after a soccer match.  At that time, he started to talk to M. about sex.  Coria-Granados told her that "he liked to get head" and that, when he was younger, he had given a young girl money for oral sex.  Coria-Granados asked M. if she wanted to touch his penis and, when she said "no," Coria-Granados asked her if she was sure.  Coria-Granados then put his hand on M.'s thigh, slid his hand up her leg, and asked her if that made her "feel weird."

## *5. Texting to M.*

¶24    Starting in 2015, and during M.'s freshman and sophomore years of high school, Coria-Granados sent M. sexually explicit text messages.  As examples, the text messages Coria-Granados wrote to M. stated that he watched pornography and masturbated, and Coria-Granados asked M. whether she had engaged in sex.  Coria-Granados instructed M. to delete each text, and M. did so because "she did not want to get into trouble."

¶25    In the next sections, we discuss the three steps of the *Sullivan* analysis in the context of this appeal.

### C.  Step One – Permissible Purpose.

¶26    As noted, the first step asks whether the party (here, the State) offers the evidence for a permissible purpose under WIS. STAT. § 904.04(2)(a).  *Sullivan*, 216 Wis. 2d at 772.  Permissible purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a).  "As long as the State and circuit court have articulated at least

*one* permissible purpose for which the other-acts evidence was offered and accepted," this step is satisfied. *Marinez*, 331 Wis. 2d 568, ¶25.

¶27 The circuit court recognized this as the first step in the *Sullivan* analysis. The circuit court's only further reference to this step was: "Why they would be admitted, purpose, is not an issue."

¶28 In briefing in this court, Coria-Granados does not dispute this determination of the circuit court and, in effect, Coria-Granados concedes that the State met its burden regarding this step and that the circuit court's ruling was in favor of the State concerning the first step of the *Sullivan* analysis. *Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (stating that a proposition not disputed on appeal may be taken as admitted).

### D. Step Two – Relevance.

¶29 We now consider the second step in the *Sullivan* analysis; that is, an assessment of whether the evidence regarding the other acts is relevant under WIS. STAT. § 904.01.[6] *Sullivan*, 216 Wis. 2d at 772; *Wisconsin v. Payano*, 2009 WI 86, ¶67, 320 Wis. 2d 348, 768 N.W.2d 832 (citing *Davidson*, 236 Wis. 2d 537, ¶35; 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE, § 404.6 (3d ed. 2008)). Evidence of other acts is "inherently relevant to prove character" and, as a result, the issue is whether the other act is relevant to anything other than to prove character. *Payano*, 320 Wis. 2d 348, ¶67 (citing DANIEL D.

---

[6] WISCONSIN STAT. § 904.01 states: "**Definition of 'relevant evidence[.]'** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

BLINKA, WISCONSIN EVIDENCE, § 404.6 (3d ed.); *State v. Johnson*, 184 Wis. 2d 324, 337 n.1, 516 N.W.2d 463 (Ct. App. 1994)).

¶30    There are two relevancy considerations within this second step. The first consideration is whether the other-acts evidence relates to a fact or proposition that is of consequence to the determination of the action. *Id.*, ¶68. The second consideration is whether the evidence is probative; in other words, whether the other-acts evidence has the tendency to make a consequential fact or proposition more or less probable than it would be without that evidence. *Id.* (citing BLINKA, WISCONSIN EVIDENCE, § 404.6 (3d ed.); *Sullivan*, 216 Wis. 2d at 772). We next discuss each relevancy consideration.

*1. The Other-Acts Evidence Relates to a Fact or Proposition of Consequence.*

¶31    In discussing this first relevancy consideration, a court's attention must be focused on the pleadings and contested issues in the case. *Id.*, ¶69. The pleadings set forth the elements of the charges. *Id.* (citing *Sullivan*, 216 Wis. 2d at 785-86 for the following proposition:  "The substantive law determines the elements of the crime charged and the ultimate facts and links in the chain of inferences that are of consequence to the case.").

¶32    For Coria-Granados to be convicted of the charged offense concerning E., the State must prove that he attempted to touch E.'s vagina for the purpose of his own sexual gratification.  *See* WIS. STAT. §§ 948.02(1)(e) and 948.01(5) (2015-16).  Accordingly, with regard to that charge, the facts and propositions of consequence are whether:  (1) Coria-Granados attempted to touch E.'s vagina; and (2) he did so for the purpose of his own sexual gratification.  To secure a conviction on the charged offense concerning M., the State must prove that Coria-Granados touched M.'s bottom without her consent for his own sexual

gratification. *See* WIS. STAT. § 940.225(3m) and (5)(b) (2015-16). With regard to that charge, the facts and propositions of consequence are whether: (1) Coria-Granados grabbed M.'s bottom without her consent; and (2) he did so for the purpose of his own sexual gratification.

¶33 Coria-Granados does not dispute the State's assertions that the other-acts evidence relates to facts and propositions of consequence to the determination of this action, and we deem that a concession on this point by Coria-Granados. *See Schlieper*, 188 Wis. 2d at 322.

¶34 Accordingly, the State has met its burden to show that the five other acts are related to facts and propositions of consequence in this action.[7]

### 2. Is the Other-Acts Evidence Probative?

¶35 The second relevancy consideration is whether the evidence is probative; that is, whether the other-acts evidence has the tendency to make a fact or proposition of consequence in this action more or less probable than it would be without the evidence. *Payano*, 320 Wis. 2d 348, ¶68. This "is a common sense determination based less on legal precedent than life experiences." *Id.*, ¶70 (quoting BLINKA, WISCONSIN EVIDENCE, § 404.6 (3d ed.)) (citing *State v. Pharr*, 115 Wis. 2d 334, 344, 340 N.W.2d 498 (1983)). Our supreme court instructs that,

---

[7] Whether the State has met its burden on this first relevancy consideration is usually reviewed by this court under the erroneous exercise of discretion standard. *See State v. Payano*, 2009 WI 86, ¶79, 320 Wis. 2d 348, 768 N.W.2d 832. However, at the only point in its ruling in which relevance was mentioned, the circuit court stated: "If there would be any kind of corroboration, even with the outside circumstances involving any of these, it would be relevant." However, immediately after stating that the court said: "Relevance is not the issue." In light of the circuit court's apparently contradictory statements about relevance, and because Coria-Granados does not dispute the State's position on this first relevancy consideration, we do not defer to the circuit court's decision on this question.

in determining if other-acts evidence is probative, a court is to consider whether "the other acts are similar, that is, whether they are near 'in time, place, and circumstance[,] to the alleged crime or to the fact or proposition sought to be proved.'" ***State v. Dorsey***, 2018 WI 10, ¶49, 379 Wis. 2d 386, 906 N.W.2d 158 (alteration in the original) (quoting ***Sullivan***, 216 Wis. 2d at 786). However, our supreme court also instructs that dissimilar events will sometimes be probative. *See* ***Payano***, 320 Wis. 2d 348, ¶70; *see also* ***Pharr***, 115 Wis. 2d at 346 ("Relevancy is not determined by resemblance to, but by the connection with, other facts." (quoted source omitted)). In addition, evidence of other acts is probative if the evidence "tends to undermine an innocent explanation for an accused's charged criminal conduct." ***Sullivan***, 216 Wis. 2d at 784. And, as discussed, the greater latitude rule applies to the relevancy analysis. *See* ***Marinez***, 331 Wis. 2d 568, ¶20.

¶36 For purposes of the second relevancy consideration, Coria-Granados does not dispute the probity of the Milwaukee incident, the soccer match incident, or the thigh incident. Instead, Coria-Granados's sole argument regarding this stage of the analysis is that the bra incident and the text messages are so dissimilar to the charged acts that a jury will consider those acts only for the improper purpose of assigning character or propensity evidence against him.[8]

---

[8] At this second consideration of the relevancy analysis, we usually determine if the circuit court has erroneously exercised its discretion in ruling on this point. *See, e.g.*, *id.*, ¶79. However, other than the apparently contradictory statements regarding relevance from the circuit court mentioned earlier, the circuit court did not make any ruling concerning this portion of the analysis, and Coria-Granados concedes as much. If the circuit court fails to articulate its reasoning, an appellate court may review the ruling independently to determine whether there is any reasonable basis for the circuit court's discretionary decision. ***State v. Davidson***, 2000 WI 91, ¶53, 236 Wis. 2d 537, 613 N.W.2d 606. Accordingly we take up Coria-Granados's request that we consider whether a circuit court could reasonably rule in his favor on this question based on the facts in the record.

¶37    The State argues that the text messages are probative because the messages sent to M. by Coria-Granados "shed[] light on Coria-Granados's motive for his behavior" and "dispenses with any attempt [Coria-Granados] may make to argue that the girls misunderstood his conduct." The State asserts that the bra incident "rightfully" made fifteen-year-old M. "feel uncomfortable" and is probative of a "chain of inferences" consequential to this case.

¶38    Coria-Granados's probity argument regarding those two acts begins with the proposition that the charged acts involved actual or attempted touching of intimate parts of each girl either in public or in the living room of a residence. Coria-Granados then contends that, in contrast, the bra incident and M.'s receipt of the text messages are dissimilar to the charged acts because the bra incident and receipt of the text messages happened in private rather than when someone else was or might be around as is alleged with the charged acts. Separately, Coria-Granados contends that the two other acts are dissimilar to the charged acts because the bra incident and the text messages were only "inappropriately sexualized interactions," and "non-assaultive actions" that even Coria-Granados describes as "somewhat creepy."

¶39    From each of those premises, Coria-Granados argues that those two acts are so dissimilar to the charged acts that the two other acts are not probative of a fact or proposition of consequence in this action.

¶40    We reject Coria-Granados's argument and conclude that evidence of the text messages and the bra incident is probative of a fact or proposition of consequence in this action. Those acts show a pattern of sexual behavior by Coria-Granados while he is near or in communication with M., and two conclusions can be drawn in this context from that fact. First, properly described

by Coria-Granados as "inappropriately sexualized interactions," evidence of those two acts makes it more probable that there was an absence of mistake on Coria-Granados's part regarding the charged act of grabbing M.'s bottom. *See Sullivan*, 216 Wis. 2d at 784 (stating that evidence of other acts is probative if the evidence "tends to undermine an innocent explanation for an accused's charged criminal conduct"). Second, those acts are similar in circumstances to the charged acts and have a connection with the charged acts. *See Dorsey*, 379 Wis. 2d 386, ¶49 (stating that other acts are probative if near in circumstances to the alleged crime or a fact sought to be proved); *see also Pharr*, 115 Wis. 2d at 346 (stating the proposition that other acts are probative if there is a "connection" with other facts of consequence to the action). More specifically, in light of Coria-Granados's inappropriately sexualized interactions, including sending sexually explicit text messages to the fifteen-year-old M., and the charged acts of attempting to touch E.'s vagina and grabbing M.'s bottom, those circumstances are sufficiently similar and connected and, therefore, probative. This is so because evidence of those acts increases the probability that the State can prove the element that Coria-Granados has committed the alleged crimes against E. and M. for the purpose of his own sexual gratification. *See* WIS. STAT. §§ 940.225(3m) and (5)(b), 948.01(5), and 948.02(1)(e) (2015-16).

¶41    For those reasons, we conclude that the State has met its burden in the second relevancy consideration to show that the other-acts evidence is probative of facts or propositions of consequence relating to the two charged crimes.

### *3. Sufficient Evidence of the Other Acts.*

¶42    In addition to the two relevancy considerations just discussed, the parties agree that, as part of the relevancy analysis, there must be a determination that, pursuant WIS. STAT. § 901.04(2), there is sufficient evidence from which a jury could find by a preponderance of the evidence that the other acts happened.[9] *State v. Gray*, 225 Wis. 2d 39, 59, 590 N.W.2d 918 (1999).  "[I]mplicit in a decision that evidence of the other act is relevant is a determination that a jury could reasonably find by a preponderance of the evidence that the defendant committed the other act."  *State v. Gribble*, 2001 WI App 227, ¶40, 248 Wis. 2d 409, 636 N.W.2d 488.  The question is not whether the judge is convinced by a preponderance of the evidence that the other act happened, and the judge does not weigh the evidence.  The question is whether a reasonable jury could find by a preponderance of the evidence that the act occurred.  *State v. Ringer*, 2010 WI 69, ¶32, 326 Wis. 2d 351, 785 N.W.2d 448; *see, e.g.*, *Gray*, 225 Wis. 2d 39, 59-60.  This is a question of law that this court reviews de novo.  *Gribble*, 248 Wis. 2d 409, ¶40.

¶43    The State contends that the circuit court never decided if a jury could reasonably find that these five other acts happened.  From that, the State argues that the circuit court erroneously exercised its discretion by failing to rule on this issue.  Coria-Granados contends that the circuit court did not as part of this step

---

[9]  WISCONSIN STAT. § 901.04(2) states:  "RELEVANCY CONDITIONED ON FACT.  When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

conclude that no reasonable jury could find that these incidents happened.[10] Because it helps to frame our analysis of this issue, we now consider pertinent statements of the circuit court in order to determine if the circuit court ruled on this question.

¶44 The circuit court, at the beginning of its ruling on the admissibility of the other-acts evidence, recognized the three steps in the *Sullivan* analysis and the greater latitude rule. After that, during its discussion of each of the five alleged other acts until the end of the circuit court's ruling, it is not entirely clear which step of the *Sullivan* analysis the circuit court was analyzing. In its ruling, the circuit court did not explicitly recognize that the question of whether a jury could reasonably find that the other acts occurred is part of step two of the *Sullivan* analysis. Nonetheless, there is a sufficient basis in the record to conclude that the circuit court took up this specific question.

¶45 The circuit court stated, as part of its consideration of each of the five purported other acts: "I should just point out that this analysis is much easier when one has a conviction, for obvious reasons; there is a clarity of the facts and we don't have any question about whether something happened or did not happen." Later, while discussing the five other acts in the aggregate, the circuit court stated: "There is, frankly, simply not enough in any of this to say anything more than this possibly happened." Near the conclusion of its ruling, the circuit court stated: "If there would be any kind of corroboration, even with the outside circumstances involving any of these, it would be relevant." However, as noted

---

[10] Instead, as will be discussed later in this opinion, Coria-Granados contends that the determinations of the circuit court discussed in this section concern step three of the *Sullivan* analysis.

earlier, immediately after saying that the circuit court said: "Relevance is not the issue." Admittedly, with that last quoted sentence from the circuit court, one could be unsure if the circuit court specifically took up the question of whether a jury could reasonably find that the other acts occurred. But, on balance, the record shows that the circuit court did rule on this question and concluded that a reasonable jury could not find by a preponderance of the evidence that the five other acts happened.

¶46 As discussed, whether there is sufficient evidence for a jury to reasonably find that any of these five other acts happened is a question of law that this court reviews de novo. *See id.* For context, and because it will also inform our discussion at the next step of the *Sullivan* analysis, we will conduct our independent review of this issue based on purported deficiencies in the other-acts evidence mentioned by the circuit court.[11]

¶47 First, the circuit court concluded that there is no "direct evidence" that any of the five other acts occurred. Our supreme court has recognized that testimony is "direct evidence." In *State v. Nieves*, 2017 WI 69, 376 Wis. 2d 300, 897 N.W.2d 363, the supreme court stated: "*David's testimony was* salient; it was detailed, *direct evidence* of Nieves' involvement in the crimes for which he was convicted." *Id.*, ¶53 (emphasis added); *see also id.*, ¶58 ("*David's testimony was* powerful; it provided the jury with *direct evidence* of the crimes for which Nieves was convicted." (emphasis added)). A leading treatise comes to the same conclusion:

---

[11] For purposes of this discussion, we will assume, as have the parties and the circuit court, that E., M., or another person will testify before a jury consistent with the proffers of evidence from the State in support of its motion to admit the other acts.

> The personal knowledge requirement presents a question of conditional relevancy under WIS. STAT. § 901.04(2): could a jury acting reasonably find that the witness had personal knowledge? The evidence may consist of the witness's own testimony about having personally observed the matter or it can be inferred from the surrounding circumstances. In short, the requirement is exceedingly modest. A witness who asserts that [he or] she "saw" the event is sufficient. Lies or innocent mistakes are for the jury to ferret out.

7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE, § 602.1 (4th ed. 2017) (footnote omitted).

¶48 As noted, the State will have witnesses testify before the jury concerning each purported other act. Therefore, the circuit court erred in concluding that there is no direct evidence that the five other acts happened.[12]

¶49 Second, the circuit court concluded that the other acts did not happen because there is no corroboration of the statements of E. and M. about those acts:

> Just one piece of corroboration is all I would be – have been looking for. Just corroborate for me that someone went to a salon in Milwaukee. Just corroborate for me that everyone was at a particular soccer field at a particular game. Just corroborate for me that an app even exists on a phone. None of this – none of this was done.

"It's just more he said/she said."[13]

¶50 However, it is not necessary to have the testimony of E. or M. corroborated in order for the jury to conclude that the other acts occurred. Indeed,

---

[12] Because there is direct evidence of each of the five other acts, we need not consider the circuit court's conclusion that there is no circumstantial evidence that any of the five events occurred.

[13] For purposes of this part of our analysis, we will assume, without deciding, that there is no corroboration of the statements of E. and M. about the purported other acts.

jurors are instructed on this point: "The weight of evidence does not depend on the number of witnesses on each side. You may find that the testimony of one witness is entitled to greater weight than that of another witness or even of several other witnesses." WIS JI—CRIMINAL 190. Consistent with that, our supreme court has stated:

> In addition, the crucial element of his testimony, i.e., that he did not shoot at defendant as he was leaving the tavern, is not corroborated by any of the other state's witnesses. However, the mere fact of numbers is not in and of itself sufficient to render the testimony of a witness inherently incredible. Looking at Kyles' testimony alone, it is not controverted by any physical evidence or facts of definite certainty. It is possible that the incident could have occurred just as Kyles said it did.

*Banks v. State*, 51 Wis. 2d 145, 153, 186 N.W.2d 250 (1971); *see also **Ruiz v. State***, 75 Wis. 2d 230, 234, 249 N.W.2d 277 (1977) ("The jury, as the judge of credibility, had the right to believe the testimony of Garcia and to disbelieve the unanimous testimony of witnesses to the contrary.").

¶51    Moreover, the Wisconsin Supreme Court has held that the greater latitude rule applies to the *Sullivan* analysis. *See **State v. Hurley***, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174. Our supreme court has stated that there may not be corroboration of allegations of sexual assault against a child. "Child sexual assaults are difficult crimes to detect and to prosecute, as typically there are no witnesses except the victim and the perpetrator." *Id.*, ¶33. For those reasons, any perceived lack of corroboration about the other-acts evidence is "for the jury to ferret out" based on cross-examination and argument. BLINKA, WISCONSIN EVIDENCE, §602.1 (4th ed.). Accordingly, the circuit court erred in concluding that a reasonable jury could not find that the other acts happened based on a lack of corroboration.

¶52 Third, in support of its conclusion that there is insufficient evidence that the five other acts happened, the circuit court relied in part on the facts that, for each other act: (1) the police were not contacted at or near the time of the acts; (2) there were no charges brought by the State based on those alleged acts of Coria-Granados; and (3) Coria-Granados was not convicted of any crimes related to the other acts. Each of those facts mentioned by the circuit court is beside the point.

¶53 We are aware of no authority, and the parties cite to none, that requires a near-contemporaneous report to law enforcement about an alleged other act for evidence of that act to be admissible. Indeed, our supreme court has recognized that child sexual assaults may not be reported for some time after an event: "The child may have been threatened, or, as is often the case, may harbor a natural reluctance to come forward. These circumstances many times serve to deter a child from coming forth immediately." *Hurley*, 361 Wis. 2d 529, ¶33 (internal citation omitted). In addition, the alleged other act need not be a crime or lead to a conviction. *See Gribble*, 248 Wis. 2d 409, ¶40 ("It is not necessary for the prior evidence to be in the form of a conviction, and other[-]acts evidence may consist of uncharged offenses."); *Gray*, 225 Wis. 2d at 59 ("It is not necessary that prior-crime evidence be in the form of a conviction; evidence of the incident, crime or occurrence is sufficient." (quoted source omitted)); *State v. Johnson*, 74 Wis. 2d 26, 41, 245 N.W.2d 687 (1996) (noting that the other acts need not be wrongful or criminal); BLINKA, WISCONSIN EVIDENCE, §404.602 (4th ed.) ("Nor must it constitute a 'bad' act (although it often is)."). Therefore, the failure to promptly report the other acts to police, and that Coria-Granados has not been charged or convicted of a crime related to those other acts, do not support the circuit court's ruling on this issue.

¶54 Fourth, the circuit court criticized the other-acts evidence proffered by the State because of what the circuit court perceived as a lack of investigation. The circuit court gave examples of the purported lack of investigation by law enforcement and then stated, "And I understand that [the other acts] are not the charges, that the investigation centered around the charges. I do understand that. But you cannot then ask for admission of the evidence [regarding the five other acts] when a full and complete investigation has not been done." The circuit court cited no authority, and neither does Coria-Granados, that there is a requirement of a "full and complete investigation" by law enforcement concerning each purported other act as a prerequisite to admission of evidence about the other acts and a conclusion that a jury could find that the acts happened. Instead, as already noted, weaknesses in the evidence are subject to cross-examination and argument to the jury.

¶55 It is required only that a jury acting reasonably could find by a preponderance of the evidence that the five other acts occurred; a circuit court is not required to conclude that a jury must so find. *See Gray*, 225 Wis. 2d at 59. For those reasons discussed, there is sufficient evidence that could allow a reasonable jury to find by a preponderance of the evidence that each of the five other acts happened, and the circuit court erred in concluding otherwise.

¶56 Therefore, the State has satisfied the second step of the *Sullivan* analysis regarding the admissibility of the other-acts evidence.

### E. Step Three - Probative Value is Not Outweighed by Jury Confusion or Unfair Prejudice.

¶57 The burden is on Coria-Granados at the third step in the *Sullivan* analysis. *See Marinez*, 331 Wis. 2d 568, ¶19. The inquiry is whether the party

21

opposing the introduction of the evidence, here, Coria-Granados, demonstrates that the probative value of the other-acts evidence is substantially outweighed by one or more reasons stated in WIS. STAT. § 904.03.[14] *Sullivan*, 216 Wis. 2d at 773; *Payano*, 320 Wis. 2d 348, ¶80. "The term 'substantially' indicates that *if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted.*" *Payano*, 320 Wis. 2d 348, ¶80 (quoting *State v. Speer*, 176 Wis. 2d 1101, 1115, 501 N.W.2d 429 (1993)). In other words, "[t]he bias is [] squarely on the side of admissibility." *Dorsey*, 379 Wis. 2d 386, ¶54 (alterations in the original) (quoting *Marinez*, 331 Wis. 2d 568, ¶41).

¶58 In addition, the greater latitude rule applies to this step of the analysis. *See id.* at ¶¶26, 33; *Marinez*, 331 Wis. 2d 568, ¶16.

> [This] more liberal standard applies in child sexual assault cases because of "the difficulty sexually abused children experience in testifying, and the difficulty prosecutors have in obtaining admissible evidence in such cases." Another reason for this rule, which is particularly relevant in this case, "is the need to corroborate the victim's testimony against credibility challenges."

*Marinez*, 331 Wis. 2d 568, ¶20 n.15 (internal citation omitted) (quoting *Davidson*, 236 Wis. 2d 537, ¶¶40, 42).

¶59 We review the circuit court's decision on the third step of the *Sullivan* analysis for an erroneous exercise of discretion. *Id.*, ¶17. It is an erroneous exercise of discretion if the circuit court fails to delineate facts that influence its decision on the admissibility of the evidence. *Payano*, 320 Wis. 2d

---

[14] WISCONSIN STAT. § 904.03 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

348, ¶¶41, 51. However, if the circuit court fails to articulate its reasoning, this court may review the ruling independently to determine whether there is any reasonable basis for the circuit court's discretionary decision. *Davidson*, 236 Wis. 2d 537, ¶53. It is also an erroneous exercise of the circuit court's discretion if the facts of record fail to support the circuit court's decision on the admission of evidence. *Payano*, 320 Wis. 2d 348, ¶51.

¶60 Coria-Granados argues that the probative value of the other-acts evidence is substantially outweighed by the danger of confusion of the issues for the jury, and the danger of unfair prejudice. We will address each of Coria-Granados's arguments in turn, but we begin our discussion of step three of the *Sullivan* analysis by considering the meaning of the phrase "probative value." We do so to correct misstatements about the meaning of that term in Coria-Granados's briefing in this court.

### *1. Probative Value.*

¶61 Concerning the third step of the *Sullivan* analysis, our supreme court has held that "probative value" has the following meaning:

> Essentially, probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value. *See* [BLINKA, WISCONSIN EVIDENCE, § 404.6 (3d ed.)] ("The more attenuated its relevancy, the lower its probative value...."). The main consideration in assessing probative value of other[-]acts evidence "is the extent to which the proffered proposition is in substantial dispute"; in other words, "how badly needed is the other act evidence?" *Id.*

*Id.*, ¶81. Consistent with that, our supreme court has stated:

> The other[-]acts evidence was properly admitted in *Pharr* because the evidence was *necessary* to the prosecution's

23

> theory of the case, and it provided an alternative explanation to the defendant's claimed innocence. Because the other[-]acts evidence was so important to the resolution of the case, the court could not say that its probative value was substantially outweighed by its danger of unfair prejudice.

*Id.*, ¶85 (internal citations omitted).

¶62 Contrary to those statements from the supreme court, Coria-Granados attempts to insert a consideration of the strength of the other-acts evidence, as opposed to the importance of that evidence, into this third step. More specifically, Coria-Granados argues that, within the third step of the *Sullivan* analysis, evidence that is "weakly supported" and "lacking in corroboration" has "low" probative value. Coria-Granados cites only *Davidson*, 236 Wis. 2d 537, ¶77, for that proposition. There, the supreme court briefly noted that, when other-acts evidence is based on a criminal conviction for that act, the "high degree of reliability of the evidence … increased its probative value." *Id.* From that sentence, Coria-Granados then attempts a significant leap and contends that the supreme court in *Davidson* "implicitly" held that, when other-acts evidence is "unreliable," the "probative value of the other act is correspondingly decreased." We reject Coria-Granados's contention for the following reasons.

¶63 The observation in *Davidson* that other-acts evidence based on a criminal conviction might be more reliable than an allegation by a witness does not "implicitly" create a wholesale re-definition of the meaning of the phrase "probative value" for purposes of this step of the *Sullivan* analysis as Coria-Granados argues. Coria-Granados's argument regarding the meaning of "probative value" is directly contradicted by the supreme court's holdings already noted. *See, e.g.*, *Payano*, 320 Wis. 2d 348, ¶81 ("Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low

probative value."). There is nothing in *Davidson*, or any other authority, which leads us to the conclusion that our supreme court has done away with its definition of "probative value" in this context and replaced it with a definition that requires a discussion of the strength of the other-acts evidence.

¶64 The question of whether a reasonable jury could find by a preponderance of the evidence that the other act happened is part of step two of the *Sullivan* analysis and separate from whether the events have "probative value" as considered in step three. The probative value, as discussed in this third step, does not take up the strength of the other-acts evidence and whether a jury could reasonably give weight to that evidence. The question of "probative value" in step three of the *Sullivan* analysis presents an inquiry different than the WIS. STAT. § 901.04(2) question of whether there is sufficient evidence to allow the jury to hear the other-acts evidence, and it places different demands on the facts and the analysis. In step three, "probative value" is gauged based on the importance of the evidence to the State's case. *See, e.g.*, *Payano*, 320 Wis. 2d 348, ¶96 ("Consequently, because the other[-]acts evidence was absolutely essential to the State's case, its probative value was compelling."). Coria-Granados attempts to alter the analysis of step three away from the reason to admit the other-acts evidence and its importance to the State's case to yet another step that weighs the strength of the evidence. Coria-Granados's argument fails in light of clear pronouncements from our supreme court.[15]

---

[15] In addition to those reasons to reject Coria-Granados's argument, we observe that there is nothing in the circuit court's ruling to show that the circuit court accepted Coria-Granados's view that the "probative value" of other-acts evidence as delineated in step three means that there is a sliding scale of strength of that evidence. Instead, as already discussed, the circuit court considered, as part of step two regarding relevancy, whether a reasonable jury could find that the other acts happened.

(continued)

¶65     With the applicable definition of "probative value" confirmed, we next discuss whether the probative value of the other-acts evidence is, as Coria-Granados argues, substantially outweighed by the danger of jury confusion or unfair prejudice.  For context, we note that the State contends that the other-acts evidence has probative value because such evidence helps to establish that:  (1) the charged acts of Coria-Granados were not mistakes; and (2) the charged acts were done for "sexual purposes."   In addition, according to the State, the other-acts evidence helps to bolster the credibility of E. and M. because the other acts make it less likely that they invented or misunderstood Coria-Granados's behavior.

### 2.  Jury Confusion.

¶66     The circuit court mentioned potential jury confusion because of the introduction of the other-acts evidence at only one point in its decision.  We italicize the pertinent words in the following sentence:  "It's just more he said/she said, and it will, *aside from the fact that it will completely confuse the jury as to what it is that they have to decide, which act is at issue in the trial*, there is no way, given the lack of evidence, that the defense can even take any steps toward figuring out a defense."  (Emphasis added.)   From those words in one sentence, Coria-Granados argues as follows in support of the circuit court's ruling, and we reject each of Coria-Granados's arguments.

---

Further, if we would conclude that "probative value" in step three of the *Sullivan* analysis concerns the strength of that evidence (and we do not come to that conclusion), we would reject Coria-Granados's contention that the other-acts evidence has "low" probative value. Coria-Granados's arguments on that point are identical to the determinations of the circuit court regarding whether a reasonable jury could find by a preponderance of the evidence that the other acts happened. As noted, we have already rejected those determinations of the circuit court.

26

¶67    First, Coria-Granados contends that the circuit court weighed the danger of jury confusion against the probative value of the other-acts evidence. We reject that contention because the record does not show that the circuit court weighed potential jury confusion against the probative value of the other-acts evidence.

¶68    Second, Coria-Granados asserts that the circuit court concluded that there would be jury confusion because the introduction of other-acts evidence in this case would cause there to be "five mini-trials." However, that was not a basis for the circuit court's decision. While the circuit court was concerned about jury confusion, the record does not show that the circuit court had concerns about the amount of evidence regarding the alleged other acts such that there would be multiple trials going on at the same time before the jury.

¶69    Third, Coria-Granados argues that there is "the potential" for jury confusion because the other acts involve the purported victims of the charged offenses, and the other acts happened at about the same time as the charged offenses. But, after stating that proposition, Coria-Granados gives no reasoning to support his argument. We need not consider contentions unsupported by reasoning. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). In addition, the mere fact that the other acts involve the purported victims of the charged offenses cannot, by itself, be a basis to exclude the evidence because of potential jury confusion. If that were the case, other-acts evidence involving victims of the charged offenses would be excluded as a matter of law, and Coria-Granados gives us no reason to conclude that is the law in Wisconsin.

¶70    Fourth, the record does not support Coria-Granados's contention that there would be jury confusion if the other-acts evidence is admitted. The bra

incident and the text messages from Coria-Granados to M. are different than the events alleged in the two charges against Coria-Granados, and testimony about those distinct events is unlikely to confuse a typical juror. The Milwaukee incident in which E. was in a car alone with Coria-Granados when he allegedly grabbed her breast and exposed his penis is factually different from the charged offense regarding E. which allegedly took place at a residence where Coria-Granados attempted to put his hand in E.'s vagina. The same is true with the thigh incident concerning M. as compared to the charged offense in which M. is the alleged victim. The soccer match incident in which Coria-Granados allegedly touched M.'s bottom is, as conceded by the State, "strikingly similar to the charged offense" regarding M. But, in short, none of the alleged other acts are so similar to the charges, or in such large numbers, that a typical juror cannot understand the difference between the charged acts and the other-acts evidence.

¶71 Importantly, if there is risk of confusion by the jury because of the introduction of other-acts evidence, there are processes available to the circuit court to mitigate that risk. The circuit court can give a jury instruction emphasizing that the other-acts evidence is used for a specific purpose and is separate from the charges against Coria-Granados. *See State v. Shillcutt*, 116 Wis. 2d 227, 238, 341 N.W.2d 716 (Ct. App. 1993) ("[T]he cautionary instruction read to the jury prior to introduction of [other acts] testimony sufficiently tempered the prejudicial effect of this evidence so as to allow its admissibility. If an admonitory instruction is properly given by the court, prejudice to a defendant is presumed erased from the jury's mind."); *see also* WIS. STAT. § 901.06 ("When evidence which is admissible … for one purpose but not admissible … for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). The circuit court can limit potential jury

28

confusion by streamlining testimony. *See Payano*, 320 Wis. 2d 348, ¶99 (referring to that process as "editing the evidence" (quoted source omitted)); BLINKA, WISCONSIN EVIDENCE, § 404.604 (3d ed.) ("The pruning of proof may take the form of limiting the number of witnesses and restricting their testimony by excluding inflammatory or extraneous details."). Finally, the circuit court may mitigate potential risk of jury confusion by restricting argument regarding the other-acts evidence to its proper purpose. *Payano*, 320 Wis. 2d 348, ¶¶99, 101.

¶72     For those reasons, Coria-Granados has not met his burden to establish that the danger of jury confusion of the issues is substantially outweighed by the probative value of the other-acts evidence and, as a result, the circuit court erroneously exercised its discretion in ruling that introduction of the other-acts evidence is barred on that basis.

### *3. Probative Value and Unfair Prejudice.*

¶73     Coria-Granados argues that we should affirm the circuit court's ruling that unfair prejudice substantially outweighs the probative value of the other-acts evidence. We disagree.

¶74     In the context of the third step of the *Sullivan* analysis, our supreme court has stated: "The determination of unfair prejudice must be made with great care because '[n]early all evidence operates to the prejudice of the party against whom it is offered.... The test is whether the resulting prejudice of relevant evidence is *fair or unfair*.'" *Id.*, ¶88 (alteration in the original) (quoted source omitted). In *Sullivan*, the supreme court defined unfair prejudice as follows:

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish

29

> or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*Sullivan*, 216 Wis. 2d at 789-90. Put another way, unfair prejudice in the context of this step of the *Sullivan* analysis is that the jury will draw improper propensity inference against the defendant. *See **State v. Fishnick***, 127 Wis. 2d 247, 261-62, 378 N.W.2d 272 (1985) (stating that the danger of unfair prejudice when using other-acts evidence "is the potential harm in a jury's concluding that because an actor committed one bad act, he necessarily committed the crime with which he is now charged").

¶75 Coria-Granados argues that the circuit court concluded that there is unfair prejudice "because the vagueness of the evidence of the other acts renders it difficult to impossible for the defense to contradict said allegations."

¶76 We now consider whether the circuit court came to that conclusion and highlight pertinent portions of the circuit court's ruling. After discussing what it considered to be weaknesses in the other-acts evidence, the circuit court stated:

> It's just more he said/she said, and it will, aside from the fact that it will completely confuse the jury as to what it is that they have to decide, which act is at issue in the trial, *there is no way, given the lack of evidence, that the defense can even take any steps toward figuring out a defense.*

(Emphasis added.)

¶77 The circuit court later stated:

> *The prejudice, unfair prejudice, far outweighs the probative value in this case.* If there would be any kind of corroboration, even with the outside circumstances involving any of these, it would be relevant. Relevance is not the issue. Why they would be admitted, purpose, is not an issue. *It's just the vagaries around these are too great to put the defense in a position of defending not only the charges, but these additional allegations.*

(Emphasis added.) The basis for the circuit court's conclusion that there would be "unfair prejudice" if the other-acts evidence is admitted is not entirely clear. But we will assume, as Coria-Granados argues, that the circuit court equated "unfair prejudice" with Coria-Granados's possible difficulty in defending against the other-acts evidence.

¶78 We reject Coria-Granados's argument that there is unfair prejudice on that basis for three reasons.

¶79 First, Coria-Granados gives us no valid reason to define "unfair prejudice" in that manner and gives us no authority that defines "unfair prejudice" as a possible difficulty of a defendant to rebut other-acts evidence. Second, an explicit premise of Coria-Granados's argument is that the other-acts evidence is weak. We have already discussed why the circuit court erred in concluding that there was a "lack of evidence" and "vagaries around" the other-acts evidence, and we do not repeat that discussion here. Suffice it to say that any argument about unfair prejudice that includes weakness of the evidence of the five other acts fails because any such weakness may be tested at trial by cross-examination and argument to the jury rather than exclusion of the evidence. Third, Coria-Granados never explains to this court how his defense against the other-acts evidence has been made difficult in this context. Instead, Coria-Granados simply states that conclusion without any reasoning, and we reject his argument on that basis. *See Pettit*, 171 Wis. 2d at 646-47.

¶80 Therefore, we reject Coria-Granados's argument that there is unfair prejudice based on purported difficulty for him to defend against the other-acts evidence.

31

¶81     Finally, Coria-Granados relies on an assertion that he concedes was not part of the circuit court ruling and asks this court to affirm the circuit court's decision for this reason.  More particularly, he argues that the other-acts evidence will "improperly influence" the jury to believe he is a person of "bad character," and the jury may convict him on that basis rather than based on evidence about the charged offenses.  This concern comes within the definition of "unfair prejudice" discussed above.  However, we conclude that this concern about unfair prejudice does not substantially outweigh the probative value of the other-acts evidence.  The State asserts that there is probative value to the other-acts evidence because it helps establish that the charged acts against Coria-Granados were not a mistake on his part and that the charged acts were done by Coria-Granados for his own sexual gratification, and the other-acts evidence helps to bolster the credibility of E. and M.  Those are all important facets of the State's case and reasonably necessary for the presentation of the prosecution's case.  "[A] witness's credibility is always 'consequential' within the meaning of WIS. STAT. § 904.01." *Dorsey*, 379 Wis. 2d 386, ¶50 (quoting *Marinez*, 331 Wis. 2d 568, ¶34).  "[C]redibility is particularly probative in cases that come down to he-said-she-said." *Id.*  In addition, the greater latitude rule applies at this third step of the *Sullivan* analysis and, as such, we must consider the difficulty of prosecuting child sexual assault cases and the importance of corroborating victims' testimony against credibility challenges. Finally, while there is a risk that must be mitigated, the tools available to a circuit court in giving a limiting instruction, streamlining evidence, and limiting argument (as we discussed above regarding mitigation of jury confusion) are sufficient to appropriately lessen that risk.  *See Marinez*, 331 Wis. 2d 568, ¶41.  In light of those factors, and our supreme court's admonition that "if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted," *Payano*, 320 Wis. 2d 348, ¶80 (emphasis omitted) (quoted source

omitted), the other-acts evidence is admissible even when balanced against the risk that the jury may use such evidence to find that Coria-Granados has committed the charged offenses.

¶82    For those reasons, Coria-Granados has failed to meet his burden to establish that the probative value of the other-acts evidence is substantially outweighed by the danger of either jury confusion or unfair prejudice and, as a result, the circuit court erroneously exercised its discretion in barring the other-acts evidence on those bases.

¶83    In sum, we conclude that the other-acts evidence is admissible under the three steps of the *Sullivan* analysis.[16]

## II.  Request to Admit E.'s Recorded Audiovisual Statement.

¶84    The State raises two purported errors of the circuit court concerning the State's request to admit E.'s recorded audiovisual statement pursuant to WIS. STAT. § 908.08(4).  Those issues are:  (1) Did the circuit court commit an error of law in rejecting the State's request to admit the recorded statement; and (2) Were the circuit court's findings of fact, and the circuit court's weighing of the facts and statutory factors, an erroneous exercise of discretion?  For the following reasons, we reject the State's arguments.

---

[16] We emphasize that our decision on the admissibility of the other-acts evidence is based on the state of the record at this time.  The circuit court's discretion regarding the admissibility of the other-acts evidence on remand is not constrained by this opinion based on material facts not currently in the record that may come to light after this matter is returned to the circuit court.

## A. Standard of Review and Governing Principles.

¶85     Whether a recorded statement of a child between the ages of twelve and sixteen[17] is admissible under WIS. STAT. § 908.08(4) is a decision committed to the sound discretion of the circuit court. *See State v. Tarantino*, 157 Wis. 2d 199, 210-11, 458 N.W.2d 582 (Ct. App. 1990); *see also* § 908.08(3)(a)1. and 2. The circuit court's findings of fact will not be overturned unless those findings are clearly erroneous. *Tarantino*, 157 Wis. 2d at 211. As with all discretionary decisions, the circuit court's ruling will be upheld on appeal so long as the circuit court examined the relevant facts of record, applied a correct standard of law, and came to a conclusion that a reasonable judge could reach. *See State v. Wiskerchen*, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730.

¶86     The State's arguments require us to interpret statutes. Questions of statutory interpretation are questions of law this court reviews de novo. *State v. Stewart*, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188; *see also State v. Mercado*, 2021 WI 2, ¶43, ___ Wis. 2d ___, ___ N.W.2d ___ ("Statutory interpretation begins with the language of the statute."); *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that if the plain language is clear, we stop the inquiry).

¶87     In order to determine whether the audiovisual recording of E.'s statement should "in the interests of justice" be admitted in evidence, the circuit court was required to consider the factors in WIS. STAT. § 908.08(4), which state:

---

[17] The parties do not dispute that E. was eleven years old when the statement was recorded, was thirteen years old when the State sought to admit the statement, and is not yet sixteen years old.

In determining whether the interests of justice warrant the admission of an audiovisual recording of a statement of a child who is at least 12 years of age but younger than 16 years of age, among the factors which the court or hearing examiner may consider are any of the following:

(a) The child's chronological age, level of development and capacity to comprehend the significance of the events and to verbalize about them.

(b) The child's general physical and mental health.

(c) Whether the events about which the child's statement is made constituted criminal or antisocial conduct against the child or a person with whom the child had a close emotional relationship and, if the conduct constituted a battery or a sexual assault, its duration and the extent of physical or emotional injury thereby caused.

(d) The child's custodial situation and the attitude of other household members to the events about which the child's statement is made and to the underlying proceeding.

(e) The child's familial or emotional relationship to those involved in the underlying proceeding.

(f) The child's behavior at or reaction to previous interviews concerning the events involved.

(g) Whether the child blames himself or herself for the events involved or has ever been told by any person not to disclose them; whether the child's prior reports to associates or authorities of the events have been disbelieved or not acted upon; and the child's subjective belief regarding what consequences to himself or herself, or persons with whom the child has a close emotional relationship, will ensue from providing testimony.

(h) Whether the child manifests or has manifested symptoms associated with posttraumatic stress disorder or other mental disorders, including, without limitation, reexperiencing the events, fear of their repetition, withdrawal, regression, guilt, anxiety, stress, nightmares, enuresis, lack of self-esteem, mood changes, compulsive behaviors, school problems, delinquent or antisocial behavior, phobias or changes in interpersonal relationships.

(i) Whether admission of the recording would reduce the mental or emotional strain of testifying or

> reduce the number of times the child will be required to testify.

## B. The Circuit Court Did Not Commit an Error of Law.

¶88    The State argues that, in ruling on the admissibility of E.'s recorded audiovisual statement, the circuit court committed two errors of law. We now address each purported error.

¶89    In ruling on the State's motion to admit the recording, the circuit court stated: "First, the child's chronological age is 13, so she is between ages 12 and 16, which means that the presumption is that the audiovisual recording does not come in. [In order to admit the statement of E.,] [t]he court must find that it is in the interest of justice to let it in." The State argues that the circuit court's use of the term "presumption" is an error of law that requires reversal of the circuit court's decision. We disagree.

¶90    The circuit court's use of the term "presumption" in this context may have been less than exact in that there is no "presumption" specifically stated in WIS. STAT. § 908.08, and there is no "presumption" recognized in WIS. STAT. ch. 891 or ch. 903 that relates to the circuit court's decision about the admissibility of the recorded statement. However, the use of the word "presumption" by the circuit court does not lead to the conclusion that the circuit court misunderstood how § 908.08(4) is applied in these circumstances.

¶91    Neither party questions that E.'s recorded audiovisual statement is "hearsay." *See* WIS. STAT. § 908.01(3) and (4) (defining hearsay statement); *see also* **Mercado**, 2021 WI 2, ¶40 ("As an out-of-court statement, a child's statement during a forensic interview is hearsay if it is offered at trial for the truth of the matter asserted."). Pursuant to WIS. STAT. § 908.02, hearsay is not admissible

except as provided by the rules of evidence or by statute. *See also **Mercado***, 2021 WI 2, ¶40 ("However, 'an out-of-court statement, even though hearsay, may be admissible if it fits within a recognized exception to the hearsay rule.'" (quoting ***Virgil v. State***, 84 Wis. 2d 166, 185, 267 N.W.2d 852 (1978)). WISCONSIN STAT. § 908.08(3) provides in relevant part that "[t]he court ... *shall admit the recording upon finding all of the following*: … [t]hat the trial or hearing in which the recording is offered will commence ... [b]efore the child's 16th birthday and *the interests of justice warrant its admission under sub. (4)*." Sec. 908.08(3)(a)2. (emphasis added); *see also **Mercado***, 2021 WI 2, ¶41 ("Video-recordings of a child's statements are admissible if the child is available to testify and the child's statements fall into one of the provisions of []§ 908.08."). For those reasons, and regardless of the use of the term "presumption," the circuit court's analysis was correct in that the recorded statement is not admissible in evidence unless and until the circuit court determines that the provisions of § 908.08(4) have been satisfied. As a result, the circuit court did not commit an error of law in making that determination.

¶92    Next, in a non-specific manner, the State argues that the circuit court committed an error of law in weighing the factors set forth in WIS. STAT. § 908.08(4) because the circuit court failed to heed this court's statement in ***State v. Snider***, 2003 WI App 172, 266 Wis. 2d 830, 668 N.W.2d 784: "The legislature's purpose in enacting [] § 908.08 was to make it easier, not harder, to employ videotaped statements of children in criminal trials and related hearings." *Id.*, ¶13.    That statement in ***Snider*** is correct regarding the purpose of the legislature in enacting § 908.08(4). However, that generalized statement about legislative purpose does not answer the question of whether the factors delineated in § 908.08(4) have been satisfied in this particular case regarding the

admissibility of E.'s recorded audiovisual statement. That question is answered by our review of the circuit court's findings of fact and its weighing of the statutory factors. Accordingly, while mindful of the legislature's purpose in enacting § 908.08, we reject the State's argument on that point and next consider whether the circuit court erroneously exercised its discretion in ruling on the admissibility of E.'s recorded audiovisual statement.

### C. The Circuit Court Did Not Erroneously Exercise its Discretion.

¶93     In arguing that the circuit court erroneously exercised its discretion, the State asks us to make findings of fact and weigh the factors listed in WIS. STAT. § 908.08(4). As the basis for this request, Coria-Granados relies on *State v. Jimmie R.R.*, 2000 WI App 5, ¶39, 232 Wis. 2d 138, 606 N.W.2d 196, for the proposition that, when the only evidence in question is a video tape, an appellate court is "in as good a position as" a circuit court to make findings of fact about the video. We decline the State's invitation for two reasons. First, our supreme court has observed that, whether findings of fact drawn from a video recording must be made by the circuit court (and deferred to by appellate courts), or whether such findings of fact drawn from a video can be made by an appellate court without deference to the circuit court's findings, is an open question that the supreme court has declined to answer to date. *See State v. Reed*, 2018 WI 109, ¶51 n.22, 384 Wis. 2d 469, 920 N.W.2d 56. More importantly, and as correctly pointed out by Coria-Granados, there is no authority that allows this court to weigh statutory factors in these circumstances as the circuit court was required to do pursuant to § 908.08(4).

¶94     The State's arguments are fairly summarized as contentions about findings the circuit court could have, but did not, make, and how the court could

have, but did not, weigh the statutory factors. It is not necessary to summarize the parties' arguments and the circuit court's findings and conclusions here. Rather, it is sufficient to state that we conclude from our review of the circuit court's ruling that the circuit court was aware of the applicable statutory factors, carefully balanced those factors based on findings of fact properly drawn from the audiovisual recording of E.'s statement, and reached a reasonable conclusion. That the circuit court could have ruled otherwise is not the question before us. Rather, after reviewing the circuit court's ruling and the arguments of the parties, we conclude that the circuit court's decision must be affirmed because the court examined the relevant facts, applied the proper legal standards, and came to a decision a reasonable judge could reach. *See Wiskerchen*, 385 Wis. 2d 120, ¶18.

¶95 In sum, we reject the State's arguments that the circuit court made an error of law, or erroneously exercised its discretion, in denying the State's request to admit the audiovisual recording of E.'s statement.

## CONCLUSION

¶96 For those reasons, we reverse in part, and affirm in part, the circuit court's order and remand this matter for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.